NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ONIJEE BURGESS | No. 24cr427 (EP)<br><br>**MEMORANDUM ORDER** |

**PADIN, District Judge.**

This matter comes before Defendant Onijee Burgess's motion to preclude the Government "from utilizing any information on the Antonio Rivera phone ([the "Rivera Phone"]) and any evidence derived therefrom" pursuant to Federal Rule of Criminal Procedure 16(d)(2). D.E. 66 ("Motion" or "Mot.") at 1. The Government opposes. D.E. 68 ("Opp'n"). Defendant replies. D.E. 69 ("Reply").

After carefully considering the parties' briefs and all other items filed on the docket, and having determined that oral argument is not needed, the Court will **GRANT in part** and **DENY in part** Defendant's Motion.

## I. BACKGROUND

### A. Factual Background[1]

The Government alleges that Onijee Burgess and Antonio Rivera, while armed, robbed at least seven pharmacies in Paterson and Passaic, New Jersey between November 2022 and April 2023. D.E. 1 ("Complaint" or "Compl.") at 3. These robberies purportedly included:

- The armed robbery of a pharmacy in Paterson on November 28, 2022 (the "Hospital Pharmacy Robbery 1");

---

[1] The facts are drawn from the Government's allegations in the Complaint. *See* D.E. 1.

- The armed robbery of a pharmacy in Paterson on December 19, 2022 (the "Mort Jacobs Pharmacy Robbery");

- The armed robbery of a pharmacy in Paterson on December 30, 2022 (the "Tony's Pharmacy Robbery 1");

- The second armed robbery of a pharmacy in Paterson on February 8, 2023 (the "Hospital Pharmacy Robbery 2");

- The second armed robbery of a pharmacy in Paterson on March 10, 2023 (the "Tony's Pharmacy Robbery 2");

- The armed robbery of a pharmacy in Passaic on March 16, 2022 (the "Das Pharmacy Robbery"); and

- The armed robbery of a pharmacy in Passaic on April 5, 2023 (the "Passaic Community Pharmacy Robbery")

(collectively, the "Robberies"). *Id.* at 3.

According to the Government, Burgess brandished and fired a gun during at least the Tony's Pharmacy Robbery 2. *Id.* at 3-4. Ballistics evidence shows that the same gun was also fired during the Hospital Pharmacy Robbery 2, the Das Pharmacy Robbery, and the Passaic Community Robbery. *Id.*

On April 20, 2023, law enforcement executed an arrest warrant charging Rivera with committing both the Hospital Pharmacy Robbery 2 and the Passaic Community Pharmacy Robbery. *Id.* (citing *United States v. Rivera*, Crim. No. 23-10166). Pursuant to a search warrant, law enforcement seized and searched Rivera's cellphone (the "Rivera Phone"),[2] which revealed a

---

[2] Review of the Rivera Phone demonstrated that for one time period, the cellphone had been associated with one phone number, and during a later time period, it was associated with another

search for "phatmacy [*sic*] on pateson" about ten days before the Tony's Pharmacy Robbery and a visit to the website for the Passaic Community Pharmacy two days after the Passaic Community Pharmacy Robbery. *Id.*

It appears that based upon the search of Rivera's phone, law enforcement identified Burgess.[3] Pursuant to a search warrant, law enforcement then discovered the following photos on Burgess's cellphone:

- A photo of a 473 mL Promethazine bottle, taken one day after the Tony's Pharmacy Robbery 1, where a 473 mL Promethazine bottle was stolen;

- A photo of the outside of the Hospital Pharmacy, taken after the Hospital Pharmacy Robbery 1 but before the Hospital Pharmacy Robbery 2;

- A photo of a black male wearing black adidas striped pants—which one of the two suspects reportedly wore during the Tony's Pharmacy Robbery 1; who was displaying a large amount of cash, taken at an undisclosed time;

- A photo of a 40-caliber Glock 23, taken two days after the Passaic Community Pharmacy Robbery, where a 40-caliber Glock 23 was fired;

- A photo of a black male wearing a black ski mask and pointing a firearm at the camera, taken two days before the Hospital Pharmacy Robbery 1; and

---

phone number. *Id.* at 4. For purposes of this Motion, the Court refers to the data extracted from the physical phone with respect to both phone numbers as the "Rivera Phone."

[3] The Complaint does not explain what led to the identification of Burgess's cellphone number. *See id.* at 4 (stating that "[l]aw enforcement also identified the cell phone number used by BURGESS which is subscribed to an individual related to BURGESS (the 'Burgess Phone')." *Id.* The Complaint only states that "[t]he Burgess Phone was twice listed in the contacts of the cellphone seized from Rivera: once under the name 'Dirt' and again under the name 'Sucio,' which means 'dirty' in Spanish." *Id.* Although it is not clear, it appears that law enforcement identified Burgess's phone number through law enforcement's search of the Rivera Phone. *Id.*

3

- A photo of an Amazon order for two weapon-mounted lights and a black ski mask to "Onijee Burgess."

*Id.* at 5-6.  Law enforcement then collected historical cell site location information and historical location data gathered from the Burgess Phone and the Rivera Phone (collectively, the "Phones"). *Id.* at 6.  This location data placed the Phones near the sites of the Robberies close to the times they were committed.  *Id.*; *see id.* at 8-12 (cellphone location data placing the Burgess Phone near the Robberies during the time they were committed).

The Government issued a warrant for Burgess's arrest on October 5, 2023, and arrested Burgess on October 17, 2025.  D.Es. 2 & 4.

**B.    Procedural History**

During this case's progression, the parties disputed the scope of the Government's discovery obligations with respect to cellphone data associated with the Phones.  In February 2025, the parties disputed whether the Government was obligated to produce a list of all neighboring cell sites and cell towers near the Robberies or whether they needed only produce a list of those cell sites and cell towers used by the Phones.  D.E. 44 at 1.  They also disputed whether the Government was obligated to produce the original raw extraction from the Phones and whether the Government needed to produce IMSI catcher data collected from the Phones during their investigation.  *Id.* at 2-3.  Despite those initial disputes, the Government ultimately produced all requested data except for the original raw extraction of the Rivera Phone.  D.E. 50 at 1.

On April 1, 2025, the Government represented that it did not have the original raw extraction of the Rivera phone in its possession.  *See id.*  Defendant objected and explained that the raw extraction necessarily had to exist and recommended that the Government review its files again.  Mot. at 2-3.  At a status conference on April 23, 2025, the Government again affirmed that

4

it did not have the original raw extraction of the Rivera Phone in its possession but represented that eight weeks was sufficient time to obtain a new raw extraction and produce it. *See* D.E. 54. Based on the Government's representations and Defendant's consent, the Court provided the Government with eight weeks to produce the missing raw extraction and instructed the Government to provide the Court with a status update by June 23, 2025 regarding the production. *See* D.E. 54.

June 23, 2025 came and went without any status update from the Government. *See* Dkt. In response to the Court's outreach about the missed deadline, the Government represented that it would file an extension request. *See* D.E. 57. The Government did not. One week later, Defendant reminded the Government about its outstanding discovery obligation. Mot. at 2-3. The Government still did not file anything. One more week later, the Court ordered the parties to provide a status update regarding the missed June 23, 2025 deadline. D.E. 55. On July 10, 2025, Defendant informed the Court that the Government—despite more than ten weeks having passed—needed four more weeks to produce the missing raw extraction. D.E. 56. Because Defendant consented to the request, the Court granted the extension and ordered the Government to produce the missing raw extraction within the requested four weeks, by August 7, 2025. D.E. 57. The Court also directed the parties to provide another joint status update on that date and warned the Government that it would not provide another extension absent a showing of cause. *Id.*

August 7, 2025 came and went without any status update. *See* Dkt. On September 9, 2025, after having heard nothing from either party, the Court directed both to promptly provide a status update. D.E. 60. On September 11, 2025—after eighteen weeks had then passed—the Government informed the Court that it would need another ninety days to expedite, complete, and

5

produce the still-missing raw extraction. D.E. 61 at 1. In response, Defendant proposed precluding the Government from relying upon the raw extraction at trial. *Id.*

This Court denied the Government's ninety-day extension request and ordered the Government to produce the missing raw extraction by September 22, 2025. D.E. 63. And because at no point had the Government explained the reasons for its repeated delays, the Court also ordered the Government to show cause as to why sanctions should not issue. *Id.* Finally, the Court instructed Defendant that it would consider a motion to exclude the missing raw extraction. *Id.*

The Government did not produce the missing raw extraction by September 22, 2025. D.E. 64. The Government did, however, explain that personnel changes within the FBI were responsible for the delays. *Id.* The Government further represented that at some undisclosed date, it requested an expedited new raw extraction from the New Jersey Regional Computer Forensics Laboratory. *Id.* The Government did not explain why it had not complied with the Court's order to provide status updates on June 23, 2025 or on August 7, 2025. *See id.*

On September 26, 2025, the Government provided the missing raw extraction. *See* D.E. 65 at 1. The Government's letter revealed that it had been in possession of the missing raw extraction since April 2023 but had simply been unable to locate the file. *Id.* A forensic examiner at the New Jersey Regional Computer Forensic Laboratory reviewed the preexisting file folder and realized it was there the entire time. *Id.* Defendant's Motion to exclude followed the Government's revelation. D.E. 66.

## II.    LEGAL STANDARD

Rule 16 imposes discovery obligations on both parties in criminal proceedings. *See* Fed. R. Crim. P. 16. "When a party fails to comply with Rule 16, the district court is empowered" under Rule 16(d)(2) "to order that party to comply with the Rule, grant a continuance, exclude the

evidence, or enter other just relief." *United States v. Lee*, 573 F.3d 155, 161 (3d Cir. 2009). The district court's ability to impose sanctions pursuant to Rule 16(d)(2) is discretionary. *United States v. Jones*, 503 F. App'x 174, 178 (3d Cir. 2012); *United States v. Lopez*, 271 F.3d 472, 484 (3d Cir. 2001).

Before imposing sanctions for a Rule 16 violation, a district court should consider "the reasons for the party's delay in producing the materials, including whether it acted intentionally or in bad faith, and the degree of prejudice to the opposing party." *Lee*, 573 F.3d at 161.

## III.    DISCUSSION

Defendant requests that this Court preclude the Government from relying on "any information on the [Rivera Phone] and any evidence derived therefrom." Mot. at 1. For the reasons below, the Court will **GRANT in part** and **DENY in part** Defendant's Motion. Specifically, the Court will preclude the Government from utilizing the raw extraction of the Rivera Phone, but the Court will not preclude the Government from utilizing the other evidence derived from the Rivera Phone, which the Government did timely produce.

The Government contends that human error, not malfeasance, was responsible for the twenty-one-week period that it took to comply with its discovery obligations and this Court's order to produce. Opp'n at 2. The Government, however, did not only fail to produce, it also repeatedly disregarded this Court's orders. Although the Government provides a belated explanation blaming personnel changes and a potential copy and paste error for its failure to produce the missing raw extraction, it does not explain why personnel changes or the copy and paste error prevented it from providing the status updates this Court ordered it to provide on June 23, 2025 and on August 7, 2025. Nor does the Government explain why it did not timely request any extensions or why, in response to this Court's outreach on June 24, 2025, it represented that it would file an extension

request and an update but then failed to file—even after a subsequent reminder from Defendant. The Government also fails to disclose (1) why it continually represented that the raw extraction was missing; (2) when it first reviewed the original file folder (if it ever did prior to September 22, 2025); (3) when it requested a new raw extraction of the Rivera Phone; or (4) when it expedited that request. Indeed, the Government does not disclose any of the dates upon which it acted to secure the missing raw extraction.

The Court can infer only that the Government requested a new raw extraction sometime on or before September 22, 2025—the date the Court ordered the Government to show cause. *See* D.E. 64. But the Court cannot determine whether the Government acted within the first eight weeks following the Court's order in April, or whether the Government acted at some later point. Nor can the Court determine at what point the Government requested expediting the raw extraction.

The Government's delay was not immaterial. Before pretrial motions were due on January 31, 2025, Defendant raised several discovery disputes with this Court, temporarily halting any potential pretrial motion practice. *See* D.E. 36; *see also* D.E. 44. Those disputes were later resolved such that by July 10, 2025, the only discovery the Government had yet to produce was the missing raw extraction at issue here. *See* D.E. 56. As a result of the Government's delay, the progression of this case (*i.e.*, pretrial motion briefing) has suffered.

Because the Government showed repeated disregard for its discovery obligations and this Court's orders, the circumstances warrant a sanction. However, because Defendant does not identify any prejudice other than case delay, the Court will narrow the sanction imposed. *See United States v. Carothers*, Crim. No. 20-31, 2024 WL 4528494, at *2 (W.D. Pa. Oct. 18, 2024) (imposing less a less severe Rule 16(d)(2) sanction than requested because there was no evidence

8

of bad faith).  Because the Government timely produced the data derived from the Rivera Phone extraction, including messages, location data, photos, and the extraction reports, the Court will preclude only the use of the *raw extraction* of the Rivera Phone.  The introduction of other evidence will not be barred by this Order.

## IV.     CONCLUSION AND ORDER

Having determined that the Government failed to comply with multiple court orders and bears the responsibility for the multi-month delay in producing the discovery to which Defendant was entitled to, the Court will **GRANT in part** the Motion and will exclude the raw extraction from the Rivera Phone.  The Court will not exclude any other evidence at this time and will accordingly **DENY in part** the Motion.

**IT IS** on this **13**th of March 2026, for the forgoing reasons,

**ORDERED** that Defendant's Motion, D.E. 66, is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that the Court will preclude the Government from introducing the raw extraction data derived from the Rivera Phone at trial; and it is further

**ORDERED** that the Court, at this time, will not preclude the Government from introducing any other evidence derived from the Rivera Phone.

_____
Evelyn Padin, U.S.D.J.

9